IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY HOOD and PRINCESS WILLIAMS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-1665 |
| TESSA POPE, *et al.*, | § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiffs Anthony Hood and Princess Williams, proceeding *pro se*, bring this action alleging housing discrimination and other claims. Defendants Asset Plus Corporation ("Asset Plus"), Karen Hefner ("Hefner"), Courtney Lambert ("Lambert"), Tessa Pope ("Pope"), and Fred Caldwell ("Caldwell") have filed an Amended Motion to Dismiss Third Amended Complaint [Doc. # 26], to which Plaintiffs have responded [Doc. # 38]. In addition, Defendants Houston Police Department ("HPD") and Officer Jacob Turner ("Turner") have filed a Motion to Dismiss Plaintiffs' Third Amended Complaint and Jury Demand [Doc. # 27], to which Plaintiffs have responded [Doc. # 37].[1] The motions now are ripe for decision. Having considered

---

[1]     Plaintiffs filed this action on June 13, 2014, and then filed several amended pleadings without seeking leave of Court. *See* Docs. # 1, # 5, # 10, # 17. Defendants filed motions to dismiss. *See* Docs. # 7, # 11. On October 8, 2014, this Court granted the
(continued...)

the parties' submissions, all matters of record, and applicable legal authorities, the Court determines that the Defendants' motions should be **granted**.

## I.   <u>BACKGROUND</u>

Plaintiffs' Complaint alleges that, in January 2012, Plaintiffs inquired about renting an apartment at The Lakeview Lofts (the "Property"), a community managed by Defendant Asset Plus.  Plaintiff Williams states that on January 19, 2012, she spoke on the phone with an Asset Plus employee and was told about a "move-in special" for a "specific floor plan," and immediately drove to the Property.  However, she alleges that, once the Asset Plus employee saw her face-to-face, the employee denied that the unit was available.  Plaintiffs allege that the denial was based on Williams' race.  Complaint, ¶ 14.

Despite this allegation, Plaintiffs state that, on January 27, 2012, they signed a lease for the originally requested unit.  Complaint, ¶ 15.  Plaintiffs state that they received the phone call from Asset Plus informing them that the unit was available "[a]fter the [P]laintiffs mentioned fair housing" on January 24, 2012.  Their lease began in February 2012.

---

[1]      (...continued)
Plaintiffs leave to file their Third Amended Complaint [Doc. # 17] ("Complaint"), ordered that Plaintiffs could not file further amendments to pleadings without leave of Court, denied the pending motions to dismiss without prejudice, and set deadlines for Defendants to file motions responsive to the Complaint.  *See* Order [Doc. # 21].  Defendants then filed the currently pending motions.

Plaintiffs allege that, at a later unspecified date, they threatened to make a fair housing complaint against Asset Plus and subsequently were moved to a different unit on the Property.  They state that the new unit was closer to Asset Plus employees and made Plaintiffs "vulnerable to continued harassment."  Complaint, ¶ 16.  The alleged harassment included "being followed, the constant sounds of slammed doors, and beatings on walls and metal," which Plaintiffs characterize as psychological tactics designed to make Plaintiffs want to leave the unit and agree not to expose Defendants' alleged racial discrimination and fraud.  *Id.*  Plaintiffs further allege that Asset Plus employees attempted to defraud them by collecting extra animal deposits and further refused to provide Plaintiffs with a copy of their lease.  Complaint, ¶¶ 15, 17.

On June 6, 2012, three Asset Plus employees and the Property owner allegedly approached one of the Plaintiffs at "an offsite storage facility" and "yelled and cursed the plaintiff out alleging that the plaintiff was trespassing," when in fact the plaintiff had rented the unit for four months.  Complaint, ¶ 19.

Plaintiffs allege further that, on July 27, 2012, Defendants tried to evict them. Plaintiffs allege that Defendant Lambert and HPD Officer Turner served them with a three-day vacate notice for non-payment, and would not listen when Plaintiffs attempted to prove that they had paid.  When Plaintiffs requested a copy of the original lease, Defendants Hefner and Pope allegedly came to Plaintiffs' unit and beat on the door aggressively.  Plaintiffs felt intimidated and filed a report with law

enforcement.   Complaint, ¶¶ 20-21.  Plaintiffs further state that they received an emailed "mutual release form" from Asset Plus which provided that Plaintiffs were not to bring future legal action or complaints in connection with their lease, contract fraud, harassment, or any other related events.   They made multiple requests for the name and contact information for the Property owner but state that Defendants refused to provide the information.  Complaint, ¶¶ 22-23.

On August 20, 2012, Asset Plus employees (Defendants Lambert and Pope) and Officer Turner allegedly "approached" Plaintiffs and Plaintiffs, in fear, immediately and repeatedly requested that someone call the police.  They state that none of the three Defendants who were present revealed that Turner was an officer.  Plaintiffs state that when Plaintiffs commented that African-Americans "in the community" were being harassed based on their race, Turner "charged at one of the plaintiffs," threatened to handcuff and jail Plaintiffs, pulled a gun from under his shirt, and  "tried to shoot one of the Plaintiffs from at least 20 yards away" but only stopped because he noticed one of Plaintiffs recording the incident.  He then pointed his gun and demanded that Plaintiff stop recording.  Plaintiffs allege that this incident violated several criminal statutes and their First Amendment rights to record an officer. Plaintiffs called 911 and, when Harris County Sheriff's officers arrived, they told Plaintiffs that other persons had called 911 because they had seen a white made attempt to shoot a black male.  Complaint, ¶¶ 24-27.  Plaintiffs state they filed a

complaint with IAD but were deterred through "various tactics."  Complaint, ¶ 28.

On August 21, 2012, Defendants allegedly entered Plaintiffs' apartment and "left various vacate notices around the unit in an attempt to intimidate the plaintiffs into leaving the property."  Complaint, ¶ 29.  On August 22, 2012, Plaintiffs left the apartment "out of fear for their lives" and "at the advice of the Houston fair housing."  Complaint, ¶ 30.  They removed the last of their belongings on August 30, 2012.  Complaint, ¶ 34.

Defendants entered an eviction for nonpayment of rent in court records on September 7, 2012.  Complaint, ¶ 35.  Plaintiffs state that in the course of the eviction proceedings Defendants' counsel made a series of defamatory comments about Plaintiffs.  They state that they then were forced to live out of a truck for seven months, their credit score dropped, and their plans for a landscaping business that was "about to take off" were thwarted.  Complaint, ¶ 36.

On January 4, 2013, Plaintiff filed an administrative complaint after their eviction, which was investigated by the Texas Workforce Commission Civil Rights Division ("TWCCRD").   *See* Exhibit A to Doc. # 26.  On May 31, 2013, the TWCCRD issued a Determination of No Reasonable Cause regarding Plaintiffs' housing discrimination claims and dismissed the complaint, finding that the evidence did not show discrimination or harassment based on Plaintiffs' race.  *Id.*

## II.   RULE 12(B)(6) LEGAL STANDARD

Traditionally, courts view with disfavor a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). The Supreme Court has explained that in considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Harrington*, 563 F.3d at 147.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).   The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570);  *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).  When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to a claim to relief.  *Iqbal*, 556 U.S. at 679.  This determination of plausibility is a context-specific task that requires the court to draw on its judicial experience and common sense.  *Id.*

In considering a motion to dismiss, a court ordinarily must limit itself to the

contents of the pleadings and attachments thereto. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)); FED. R. CIV. P. 12(d)).   Documents "that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).   "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.   These presumably are documents whose authenticity no party questions. *See Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

## III.   ANALYSIS

Plaintiffs bring claims against Defendants for violations of various criminal statutes (18 U.S.C. §§ 241, 242, 249); for violations of the Fair Housing Act (42 U.S.C. §§ 3604, 3617); for violations of their First Amendment right to freedom of expression; and for defamation of character.

### A.   Criminal Causes of Action

Plaintiffs bring claims against Defendants for violations of 18 U.S.C. § 241 (civil rights conspiracy), 18 U.S.C. § 242 (criminal civil rights violations), and 18 U.S.C. § 249 (hate crimes).  These statutory provisions pertain to criminal charges, which can be brought only by government prosecutors.  Plaintiffs, as private actors, do not have the authority to bring these causes of action.

Plaintiffs' claims under 18 U.S.C. §§ 241, 242, and 249 are dismissed with prejudice.

### B.   **Fair Housing Act**

Plaintiffs bring claims under the Fair Housing Act for housing discrimination, 42 U.S.C. § 3604, and for threats or coercion in connection with exercise of rights to fair housing, 42 U.S.C. § 3617.  They allege that they initially were denied a particular apartment unit and move-in special based on their race, that they were given discriminatory terms in an animal addendum to the lease, that they were harassed during their rental period when Defendants made loud noises and followed them, and that Defendant Turner, an off-duty HPD officer working as a courtesy officer for Asset Plus, pulled a gun on Plaintiffs to prevent them from voicing their concerns about the alleged discrimination.  Plaintiffs filed an administrative complaint with TWCCRD, which body found no reasonable cause to believe that a discriminatory housing practice occurred and dismissed Plaintiffs' complaints.  In particular, the TWCCRD found that Defendants did not refuse to rent to Plaintiffs based on race and

did not subject Plaintiffs to different terms, conditions, privileges, services, or facilities based on race.[2]  Plaintiffs subsequently brought this action.

Plaintiffs identify their Section 3604 claim as a claim of "housing discrimination through disparate treatment," in particular, that Plaintiffs are African-Americans and "were treated differently than others who attempted and rented apartment units during said time period."  Complaint, at 1.  A disparate treatment claim requires a showing of "deliberate discrimination."  *L&F Homes Development, L.L.C. v. City of Gulfport, Miss.*, 538 F. App'x 395, 401 (5th Cir. 2013) (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).  When establishing a claim of deliberate discrimination through indirect evidence, the plaintiff must show (1) that the defendant's stated reason for its decision was a pretext for illegal discrimination and (2) a reasonable inference that race was a significant factor in the defendant's decision.  *Artisan/American Corp. v. City of Alvin, Tex.*, 588 F.3d 291, 295 (5th Cir. 2009).[3]

The Fifth Circuit has held that Sections 3604(a) and 3604(b), both of which are invoked by Plaintiffs in support of their disparate treatment claim, are limited to the

---

[2]     *See* Exhibit A to Doc. # 26.

[3]     A defendant's decision "may have been unsound, unfair, or even unlawful, yet not have been violative of the Fair Housing Act if there is no evidence that race was a significant factor" in the decision.  *Id.* at 291 & n.9 (quoting *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1556 (5th Cir. 1996)) (internal quotation marks and alterations omitted).

initial "sale or rental" of the property.  As for Section 3604(a), which makes it

unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse

to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a

dwelling to any person because of [race]," the Fifth Circuit held that the statutory

language did not reach claims of current homeowners regarding the value or

habitability of their property:

> [Authority from the Seventh, Fourth, and Third Circuits] buttress[es] our
> conclusion that the simple language of § 3604(a) does not apply to
> current homeowners [or renters] whose complaint is that the value or
> "habitability" of their houses has decreased because such a complaint is
> not about "availability."

*Cox v. City of Dallas*, 430 F.3d 734, 741 (5th Cir. 2005) (rejecting claim that the City

of Dallas violated Section 3604(a) when it failed to prevent dumping at the housing

site).  *See Southend Neighborhood Imp. Ass'n v. St. Clair Cty*, 743 F.2d 1207, 1210

(7th Cir. 1984) ("Section 3604(a) is designed to ensure that no one is denied the right

to live where they choose for discriminatory reasons, but it does not protect the

intangible interests in the already-owned property raised by the plaintiffs'

allegations"); *AHF Cmty Dev't, L.L.C. v. City of Dallas*, 633 F. Supp. 2d 287, 299-302

(N.D. Tex. 2009) (Fitzwater, J.).  Similarly, *Cox* limited Section 3604(b)'s protection

against discrimination "in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection therewith, because

of [race]," to the "sale or rental" of a dwelling.  *Cox*, 430 F.3d at 745-47.  The Court

held that the statutory language "in connection therewith" did not prohibit discrimination in the provision of services or facilities "in connection" with a dwelling in general, but rather "in connection" the sale or rental of a dwelling. *Cox*, 430 F.3d at 745-46.

In this case, Plaintiffs' Complaint alleges that Plaintiff Williams was told on January 19, 2012, that a move-in special was being offered and that a specific floor plan was available but that, when an Asset Plus employee saw Plaintiffs "face to face," she denied availability of the unit based on Plaintiffs' race. Complaint, ¶ 14. However, Plaintiffs further plead that on January 27, Plaintiffs "signed a lease for the originally requested unit." *Id*. ¶ 15. Based on these allegations, Plaintiffs have not stated a claim under either Section 3604(a) or 3604(b) because they have not alleged that they were denied the requested unit, or otherwise discriminated against, in connection with the initial rental of the unit. *See Cox*, 430 F.3d 734.[4] Although Plaintiffs allege harassment during their rental period, such as additional fees, loud noises, and being followed, these allegations do not pertain to the initial rental of the

---

[4]    Plaintiffs' Complaint also invokes Section 3604(c), which makes it unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on [race], or an intention to make any such preference, limitation, or discrimination." However, Plaintiffs have alleged no facts supporting a claim under this subsection. To the extent Plaintiffs rely on the promised "move-in special" to state a claim under Section 3604(c), such allegation is insufficient because Plaintiffs have made no allegation that the move-in special "indicated any preference, limitation, or discrimination based on [race]," as the statute requires.

unit and therefore do not state a claim under Section 3604.[5]

Plaintiffs also bring a claim under Section 3617,  which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604 . . . of this title."  42 U.S.C. § 3617.  Because Plaintiffs have failed to state a claim under Section 3604, their Section 3617 claim also fails. *Reule v. Sherwood Valley I Council of Co-owners Inc.*, 235 F. App'x 227 (5th Cir. 2007); *McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355 (5th Cir. 2001).  *See AHF*, 633 F. Supp. 2d at 302-03.[6]

Plaintiffs' claims under the Fair Housing Act are dismissed with prejudice.

## C.   First Amendment

Plaintiffs complain that Defendant Turner, an off-duty HPD officer employed by Asset Plus as a security officer, violated their First Amendment rights when he pulled a gun and threatened to arrest them after hearing Plaintiffs complain about

---

[5]     Similarly, Plaintiffs' allegation that Officer Turner pulled a gun and threatened to arrest them does not pertain to the initial rental of the unit.  However, as addressed in the subsequent section, these allegations are relevant to Plaintiffs' First Amendment claim.

[6]     The Asset Plus Defendants further argue that Plaintiffs' claims under the Fair Housing Act are barred by the statute of limitations.  However, this issue is complicated by the tolling of the limitations period while administrative proceedings were pending.  The Court need not and does not reach the limitations issue.

racial discrimination at the Property.  Complaint, ¶ 27.  *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (elements of First Amendment retaliation claim outside of public employment context).

Plaintiffs have not properly pleaded this claim because they have not brought a claim under Section 1983, which creates a private right of action to redress the violation of constitutional rights committed by a person acting under color of state law.  42 U.S.C. § 1983; *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).  Plaintiffs' First Amendment claim therefore will be dismissed without prejudice.  If Plaintiffs wish to replead their claim under Section 1983, they must do so on or before **February 6, 2015.**

### D.      Defamation of Character

Plaintiffs bring a claim against the Asset Plus Defendants for defamation alleging that, during the eviction proceedings in September 2012, Defendants and Brian Cweren (counsel for Asset Plus) made a series of knowingly false statements about Plaintiffs, then submitted those statements to the presiding judge and made them part of the public record.

Under Texas law, a one-year statute of limitations applies to defamation claims. TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues.")   In this case, the latest possible accrual

time for Plaintiffs' defamation claim is September 2012, when Plaintiffs' eviction proceedings took place.[7]  The limitations period for this claim therefore expired in September 2013.  Because Plaintiffs did not file this suit until June 2014, the defamation claim is barred by the statute of limitations and is dismissed with prejudice.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Asset Plus' Amended Motion to Dismiss Third Amended Complaint [Doc. # 26]  is **GRANTED**.  All of Plaintiffs' claims against Defendants Asset Plus Corporation, Karen Hefner, Courtney Lambert, Tessa Pope, and Fred Caldwell are **DISMISSED with prejudice**.   It is further

**ORDERED** that the Motion to Dismiss Plaintiffs' Third Amended Complaint and Jury Demand [Doc. # 27] filed by HPD and Officer Turner is **GRANTED**.  If Plaintiffs wish to replead their First Amendment claim, they must do so on or before **February 6, 2015.**  Failure to meet this deadline will result in entry of a final judgment in accordance with this Memorandum and Order.

SIGNED at Houston, Texas, this **15**th day of **January, 2015**.

Nancy F. Atlas
United States District Judge

---

[7]     Plaintiffs have not alleged otherwise and have not argued that any tolling period applies.